CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
February 17, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DWIGHT Q. JACKSON**, | ) | Case No.7:25cv00137 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **MR. COLLEY, KMCC** | ) | By:  Pamela Meade Sargent |
| **Transportation Officer,** | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff, Dwight Q. Jackson, ("Jackson"), a Virginia inmate proceeding pro se, filed this civil rights Complaint under 42 U.S.C. § 1983.  He sues "Mr. Colley," a Keen Mountain Correctional Center transportation officer, ("Colley"), alleging that Colley activated a shock belt on him.  This matter is before the court on Colley's Motion For Summary Judgment, (Docket Item No. 21) ("Motion"), to which Jackson has failed to respond. Following notice, pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge. Pursuant to Order entered on June 18, 2025, (Docket Item No. 15), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1).  Upon review of the Motion and the evidence presented, I will grant the Motion.

I.     Facts

In his Amended Complaint, (Docket Item Nos. 7, 7-1), which was made under penalty of perjury, Jackson alleges that on December 16, 2024, Colley violated his Eighth Amendment right when Colley inflicted cruel and unusual

1

punishment upon him by intentionally activating a "stunbelt" that had been placed upon him in preparation for transportation.

Jackson also attached a Facility Request, dated December 18, 2024, complaining of the same incident and stating, "I need to see Dr. Ball." (Docket Item No. 7-1 at 3.) The Facility Response, which is not signed, stated, "You were seen when you returned from transport & are already placed on to see provider." (Docket Item No. 7-1 at 3.) Jackson attached another Facility Request, dated December 18, 2024, stating that he was suffering from depression and mental and emotional distress due to the incident, and requesting to see a mental health specialist. (Docket Item No. 7-1 at 7.) Qualified Mental Health Professional Trent responded on December 23, 2024, stating, "Saw Dr. Stevenson on 12.23.2024." (Docket Item No. 7-1 at 7.) Jackson also attached another Facility Request, dated December 22, 2024, asking to be seen by medical. (Docket Item No. 7-1 at 6.) The facility Response, which is not signed, stated, "tylenol/motrin @ am/pm pill call." (Docket Item No. 7-1 at 6.)

Jackson also attached two Affidavits to his Amended Complaint. (Docket Item No. 7-1 at 10-12.) In one of the Affidavits, Jackson simply restates the allegations contained in his Amended Complaint. (Docket Item No. 7-1 at 10.) In the other Affidavit, Jackson addresses his attempts to exhaust his administrative remedies. (Docket Item No. 7-1 at 11-12.)  In this Affidavit, Jackson stated that he filed an Emergency Grievance on December 18, 2024, complaining that he was "unlawfully" stunned with a security transport stunbelt on December 16, 2024. He said this Emergency Grievance was attached as Exhibit G to his Amended Complaint. The receipt for this Emergency Grievance is attached to Jackson's Amended Complaint at Exhibit G1. Jackson said that he submitted a Written

Complaint, which he attached to his Amended Complaint as Exhibit D, and he received a receipt for this Written Complaint on December 19, 2024, which he attached to his Amended Complaint at Exhibit D1.

Jackson stated that he filed a Regular Grievance on December 30, 2024, complaining of the incident. He attached a copy of this Regular Grievance as Exhibit B to his Amended Complaint. Jackson said that he never received a response to this Regular Grievance from the Grievance Coordinator. He stated, "As a result of the Coordinator failing to provide me with a copy of the response to my Regular Grievance from the Warden, I was not allowed to complete my grievance procedure on this matter. Due to the fact that the Grievance Coordinator had blocked my access to the Courts." (Docket Item No. 7-1 at 11-12.)

Exhibit G, attached to Jackson's Amended Complaint, is an Emergency Grievance, Log No. 00403, dated December 18, 2024, which states:

> On the date of 12/16/2024, I went on a court run off Keen Mountain compound. During that transportation run the security shock belt [I] had on shock[ed] me. As a result of this incident [I] am experiencing extreme pain… in my lower back and lower stomach [areas] of my body[. I] am also feeling muscle [spasms].

(Docket Item No. 7-1 at 8.) The Staff Response and Receipt sections on this form are not completed. Jackson also attached Exhibit G1 -- a Receipt for Log No. 00403 showing it was received by Correctional Officer M. Viars on December 18, 2024, at 7:38 p.m. (Docket Item No. 7-1 at 9.) Also written on this Receipt is the statement, "I was never seen. And I never got my copy back." (Docket Item No. 7-1 at 9.)

3

Exhibit D to the Amended Complaint is a copy of a Written Complaint form, dated December 18, 2024, which states:

> On the date of 12/16/2024, I went on a court run off Keen Mountain compound. During that transportation run the security shock belt [I] had on shock[ed] me. As a result of this incident [I] am experiencing extreme pain… in my lower back and my lower stomach [areas] of my body[. I] am also feeling muscle [spasms].

(Docket Item No. 7-1 at 4.) It is noted on the Written Complaint form that it was received on "12/19" and logged as Log No. KMCC-24-WRI-02930. Major Whaley responded, "This incident is under investigation." (Docket Item No. 7-1 at 4.) Exhibit D1 to the Amended Complaint is a Grievance Receipt for Written Complaint No. KMCC-24-WRI-02930. (Docket Item No. 7-1 at 5.)

Exhibit B to the Amended Complaint is a copy of a Regular Grievance, dated December 30, 2024, which states:

> On the date of 12/16/2024, I went on a court run off Keen Mountain compound. During that transportation run the security stun/shock belt [I] had on shock[ed] me. As a result of this incident [I] am experiencing extreme pain… in my lower back and lower stomach areas of my body [. I] am feeling muscle [spasms].

(Docket Item No. 7-1 at 2.) This Regular Grievance does not have Log Number on it.

Attached to the Motion is an Affidavit by H. Hardin, Grievance Coordinator at Keen Mountain Correctional Center, ("Keen Mountain"). (Docket Item No 22-

4

1) ("Hardin's Affidavit"). In this Affidavit, Hardin stated that he or she is responsible for maintaining inmate grievance files at Keen Mountain. Hardin stated that Operating Procedure, ("OP"), 866.1 governs the Offender Grievance Procedure and is a mechanism for offenders to resolve complaints, appeal administrative decisions and challenge the substance of procedures. A copy of OP 866.1 is attached to Hardin's Affidavit as Enclosure A. Hardin stated that all issues are grievable except for those pertaining to policies, procedures and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, state and federal court decisions, laws and regulations and matters beyond the control of the VDOC.

OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions and challenge the substance of procedures. OP 866.1 requires an inmate to make a good faith effort to resolve his complaint informally prior to submitting a Grievance. According to OP 866.1, the first stage of the informal complaint procedure is for the inmate to verbally communicate his concerns to staff. If the issue is not resolved or the inmate is not satisfied with the resolution, he generally must document his good-faith effort using a Written Complaint form. Within 15 days of receipt of the Written Complaint form, staff should respond to the Written Complaint. If an inmate is not satisfied with the staff's response to the Written Complaint, or if 15 days have passed without a staff response, he may file a Regular Grievance. The inmate must attach a copy of his Written Complaint with his Regular Grievance. If an inmate did not receive a response to his Written Complaint, he may attach the "Grievance Receipt" he received for his Written Complaint. According to Hardin's Affidavit, a Grievance Receipt is a VDOC document that an inmate receives after filing a Written Complaint or Regular Grievance.

A Regular Grievance generally must be filed within 30 days from the date of the incident. If the Regular Grievance does not meet the filing requirements of OP 866.1, the Grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. According to Hardin's Affidavit, a copy is made of all Regular Grievances returned to an inmate with the justification for the return noted on the second page of the form, and a copy is kept in the inmate's Grievance File. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review. According to Hardin's Affidavit, appealing the intake decision does not satisfy the exhaustion requirement.

If a Regular Grievance is accepted at intake, there are two levels of review. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education. The time limit for issuing a Level I response is 30 days, and 20 days for a Level II response. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the Grievance for appeal. Pursuant to OP 866.1, an inmate properly exhausts his administrative remedies by timely filing a Regular Grievance at the institutional level and appealing that Regular Grievance through all applicable levels of review.

An inmate may file an Emergency Grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal

injury or irreparable harm. The filing of an Emergency Grievance does not satisfy the exhaustion requirement.

According to Hardin's Affidavit, Hardin reviewed Jackson's Grievance File.[1] Attached to Hardin's Affidavit as Enclosure B is a copy of Jackson's Grievance Report from January 1, 2024, through May 16, 2025. According to Hardin's Affidavit, a Grievance Report is a VDOC document that logs all Written Complaints and Regular Grievances that were accepted at intake, as well as appeals to Level II of Regular Grievances that were filed by an inmate. A Grievance Report does not reflect Regular Grievances that were rejected at intake or Emergency Grievances. All Written Complaints, accepted Regular Grievances and appeals to Level II that Jackson filed between January 1, 2024, and May 16, 2025, are reflected on Jackson's Grievance Report, according to Hardin's Affidavit.

According to Hardin's Affidavit, based on Hardin's review of Jackson's Grievance Report and Grievance File, Jackson submitted a Written Complaint, Log No. KMCC-24-WRI-02930, dated December 18, 2024, in which he complained that he went out on a court run on December 16, 2024, and during that transportation run, the security shock belt he was wearing shocked him. Hardin stated Major Whaley responded to Jackson's Written Complaint, Log No. KMCC-24-WRI-02930, on December 19, 2024, and wrote, "This Incident is under investigation." A copy of Written Complaint, Log No. KMCC-24-WRI-02930 is attached to Hardin's Affidavit as Enclosure C.

---

[1] Hardin's Affidavit states that Jackson's Grievance File was maintained at "SISP." There is no explanation of what "SISP" stands for, but it usually refers to Sussex I State Prison in VDOC filings, which make no sense in this case, which occurred at Keen Mountain.

7

Hardin stated that Jackson also submitted an Emergency Grievance, Log No. 00403, dated December 18, 2024, at 7:30 p.m. complaining that he went out on a court run on December 16, 2024, and during that transportation run, the security shock belt he was wearing shocked him. Nurse Lester responded on December 18, 2024, at 10:45 p.m. and determined that Jackson's Emergency Grievance was not an emergency. Nurse Lester advised Jackson that he should sign up for sick call and noted that Jackson was seen in the morning of December 18, 2024, and put on the doctor's list. A copy of Emergency Grievance, Log No. 00403, is attached to Hardin's Affidavit at Enclosure D.

Hardin stated that Jackson failed to file a Regular Grievance regarding this incident within 30 days of the incident, and, therefore, he failed to properly follow OP 866.1 to fully exhaust his administrative remedies.

Jackson's Grievance Report, Enclosure B, shows that Jackson filed Written Complaint, Log No. KMCC-24-WRI-02930, dated December 18, 2024, regarding this incident. The Grievance Report does not reflect that Jackson ever filed a Regular Grievance regarding this incident.

## II. Analysis

In his Motion, Colley argues that summary judgment should be entered in his favor because there is no genuine dispute of fact, and he is entitled to judgment as a matter of law. With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Prison Litigation Reform Act, ("PRLA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[E]xhaustion is mandatory under the PRLA and … unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*

*v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *See Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004). Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *See Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory.") An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The defendants bear the burden of providing the affirmative defense that plaintiff failed to exhaust available administrative remedies regarding his claims before filing suit. *See Jones*, 549 U.S. at 216.

There is no dispute in this case that Jackson did not fully exhaust his administrative remedies regarding his excessive force claim against Colley. An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). Officers' actions that prevent an inmate's use of a grievance procedure, including threats against the inmate, may be sufficient to show that the grievance procedure was unavailable to the inmate. *See Ross v. Blake*, 578 U.S. 632, 644 (2016). Jackson argues that the Grievance Coordinator failed to respond to the Regular Grievance that he filed and that this failure prevented him from exhausting

10

his administrative remedies. However, the evidence before the court shows that a failure to respond to a Regular Grievance does not prevent an inmate from exhausting his administrative remedies, in that OP 866.1 allows an inmate who does not receive a timely response at any level to appeal to the next level, which Jackson concedes he did not do.

Based on the evidence before the court, I find that there is no genuine dispute of material fact that the established grievance procedure at Keen Mountain was available to Jackson at the time he was required to exhaust his administrative remedies on his excessive force claims against Colley or that Jackson did not fully exhaust his administrative remedies regarding his claims against Colley. Therefore, I will grant the Motion and enter summary judgment in Colley's favor.

An appropriate Order will be entered.

**ENTERED**: February 17, 2026.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE